UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

JOHN DOE,
JOSH LIBERMAN,
MEGAN BARRETT,
CHRISTINE HERRICK,
DAVE GREENLAWN,

                                        Plaintiffs,

                                                            DECISION AND ORDER

                                                            07-CV-6538L

                        v.

MICHAEL GREEN, Individually and in his
Official Capacity as Assistant District Attorney
for Monroe County,
WILLIAM GARGAN, Individually and in His
Official Capacity as Assistant District Attorney
for Monroe County,
RON EVANGELISTA, Rochester City Police
Union President,
CHIEF DAVID T. MOORE, in his Capacity as the
Chief of Police for the City of Rochester,
MONROE COUNTY,

                                        Defendants.
_____

**INTRODUCTION**

        In the early morning hours of June 1, 2007, an altercation occurred between two groups of

people on South Goodman Street in the City of Rochester, New York.  At some point, officers of

the Rochester Police Department ("RPD") were summoned, but upon their arrival they became

embroiled in a confrontation with some of the participants in the altercation, several of whom were then taken into custody.

On June 26, 2007, five members of one of the two groups involved in the altercation filed a civil rights lawsuit, *Lieberman v. City of Rochester*, 07-CV-6316 ("*Lieberman*") against the City of Rochester ("City") and other defendants, alleging that certain RPD officers violated plaintiffs' constitutional rights in a number of respects during the June 1 incident.

On November 1, 2007, the same five plaintiffs filed a second lawsuit, *Doe v. Green*, 07-CV-6538 ("*Green*") -- the case now before the Court --  based on events that occurred after the June 1 incident. In *Green*, the plaintiffs allege that the defendants, who include Monroe County ("County"), Monroe County District Attorney ("DA") Michael Green, Assistant District Attorney ("ADA") William Gargan, and Officer Ron Evangelista (who at the time of the relevant events was president of the Rochester Police Locust Club, the RPD officers' union), violated plaintiffs' constitutional rights in connection with a grand jury investigation of the June 1 incident.  Plaintiffs also allege in *Green* that defendants' actions, particularly certain public statements that defendants made concerning the June 1 incident and the ensuing RPD and grand jury investigations of that incident, impeded or interfered with plaintiffs' ability to pursue their claims in the *Lieberman* action.[1]

In the instant action (*Green*), the County, Green and Gargan (collectively "County defendants") have moved to dismiss the complaint for failure to state a claim upon which relief can

---

[1]Plaintiffs have voluntarily withdrawn their claims in *Green* against the City, RPD Chief David Moore, and several RPD officers, and those claims have been dismissed.  *See Green* Docket Entry #26.

be granted, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  Evangelista has separately moved under Rule 12(b)(6) to dismiss the claims against him.

In addition, plaintiffs have filed a motion to amend the *Green* complaint, and to consolidate the *Green* and *Lieberman* actions.[2]  Plaintiffs need not seek leave of court to amend the complaint at this juncture, however.  Rule 15(a) permits a party to amend a "pleading once as a matter of course ... before being served with a responsive pleading."  The Second Circuit has held that "a motion to dismiss is not a responsive pleading within the meaning of Rule 15(a)."  *Barbara v. New York Stock Exch., Inc.*, 99 F.3d 49, 56 (2d Cir. 1996); *see also Batyreva v. New York City Dep't of Educ.*, No. 07 Civ. 4544, 2008 WL 4344583, at *15 (S.D.N.Y. Sept. 18, 2008); *Denuzzo v. Yale New Haven Hosp.*, 465 F.Supp.2d 148, 156 (D.Conn. 2006).  Accordingly, I will treat the amended complaint as having been filed as of right, and decide the motions to dismiss in light of the claims asserted in the amended complaint.


## FACTUAL BACKGROUND

As stated, both the *Lieberman* and *Green* actions have their roots in events that occurred on June 1, 2007.  Since *Green*, which is the subject of the pending motions to dismiss, is directly based on events occurring after that date, however, the events of June 1 will only be briefly summarized here.

The facts concerning those events are sharply disputed by the two sides, but for purposes of the motions to dismiss I must accept the truth of plaintiffs' allegations.  *See Goldstein v. Pataki*, 516

---

[2]At this point, there are no motions pending in the *Lieberman* action.

F.3d 50, 56 (2d Cir.), *cert. denied*, ___ U.S. ___, 128 S.Ct. 2964 (2008).  The following summary, then, is based on the complaints in both *Lieberman* and *Green*.

In the early morning hours of June 1, 2007, the plaintiffs–Alexander Terrance, Josh Lieberman, Megan Barrett, Christine Herrick and Dave GREENLAWN–were walking home from a bar on Monroe Avenue in Rochester.  As they were passing a house on South Goodman Street, a group of two women and two men on the front porch of the house began verbally harassing plaintiffs and calling them "faggots," "queers," etc.

Plaintiffs continued walking, but the other four persons came off the porch and began following plaintiffs.  The four then physically attacked plaintiffs with kicks, punches, and blows using a metal pipe.

At some point during this melee, the police were called.  When they arrived, the participants were still on the scene, although they were no longer physically fighting.  One of the plaintiffs pointed out their alleged attackers, one of whom was still carrying the pipe that she had used in the assault.

The police initially made no arrests, and told everyone to just "go home."  This upset the plaintiffs, who believed then, and allege now, that they were the victims of an unprovoked assault.  Some of the plaintiffs began arguing with the officers, and the argument soon escalated to the point that the officers told the plaintiffs that *they* would be arrested if they did not leave the scene.

The details of what occurred next need not be set forth at length here, but in short, the confrontation between plaintiffs and the officers escalated, and two of the plaintiffs, Terrance and Lieberman, ended up being arrested and taken into custody.  Plaintiffs allege that the officers used

- 4 -

excessive force when making the arrests, and that some of the officers used anti-gay slurs and were otherwise verbally abusive toward plaintiffs.

Lieberman was taken to the police station, where he was held for a few hours and released. He was charged with three counts of disorderly conduct. Terrance was initially taken to a hospital for treatment of his injuries, and from there he was taken to jail.[3] He was eventually released and charged with "failure to disperse."

Plaintiffs filed the complaint in *Lieberman* on June 26, 2007, asserting various claims under federal and state law against the City, RPD Police Chief David Moore, RPD Sergeant Shaw, RPD Lieutenant Ward, and RPD Officers Tortoro, MacFall, and Yodice.[4] All the individual defendants are named in both their official and individual capacities.[5] Plaintiffs seek an unspecified amount of compensatory and punitive damages.

As stated, the complaint in this second action (*Green*) was filed on November 1, 2007. In *Green*, plaintiffs allege the following facts concerning events that transpired after the June 1 incident.

---

[3]It is not clear if Terrance's injuries were inflicted during the initial fight with the group from the porch, during Terrance's arrest, or after he was placed in the police car; plaintiffs allege that Terrance lost consciousness for a while around the time of his arrest, and that when he awoke in the back of the police car he discovered that the tip of one of his toes had been severed. *Lieberman* Amended Complaint ¶ 39.

[4]The caption and some of the individual causes of action in the *Lieberman* complaint list Yodice as a defendant, but he does not appear otherwise to be identified or referred to in the factual allegations of the complaint.

[5]Plaintiffs have voluntarily withdrawn their claims in *Lieberman* against the County, the Monroe County Sheriff, and unnamed sheriff's deputies, and those claims have been dismissed. *See Lieberman* Docket #11.

According to plaintiffs, following that incident, they filed a citizens' complaint with the RPD, based on the RPD's failure to arrest any of the alleged perpetrators of the assault. Plaintiffs allege that the RPD initially made little effort to investigate plaintiffs' allegations, and showed little inclination to investigate any potential wrongdoing on the part of its own officers.

Eventually, however, the RPD did initiate an internal investigation of the June 1 incident. On July 25, 2007, Chief Moore held a news conference in which he stated that there were "concerns about the conduct of several officers" and that he was "very much concerned about inappropriate behavior" on the part of some RPD officers. Amended Complaint ¶ 75.

On September 13, 2007, the RPD announced that a civilian review board had upheld some of plaintiffs' allegations concerning the June 1 incident, though Chief Moore would not disclose which specific allegations had or had not been found substantiated. Moore stated that the RPD had "made some mistakes," but he did say whether any particular officers had been found to have violated any laws or departmental policies, nor did he identify any officers who had been disciplined as a result of the investigation. Amended Complaint ¶¶ 94-97.

In October 2007, defendant Green convened a grand jury to decide whether any charges should be brought with respect to the June 1 incident. In mid-October, the grand jury returned a "no bill," and no charges were filed. Amended Complaint ¶¶ 118-24.

Plaintiffs' claims in *Green* relate generally to alleged acts and statements made by the defendants during the investigation of the June 1 incident. In particular, plaintiffs allege that Green and Gargan dissuaded them from testifying before the grand jury. They allege that on September 18, 2007, at Gargan's request, plaintiff Terrance and plaintiffs' attorney met with Gargan at his office.

Gargan allegedly refused to tell them whether plaintiffs were a "target" of the grand jury, and he indicated that plaintiffs would not be subpoenaed or given immunity to testify.[6]  Amended Complaint ¶¶ 103-08.

Plaintiffs also allege that Evangelista improperly injected himself into these matters, making a number of public comments supporting the RPD officers who were the subject of plaintiffs' complaints and the ensuing internal RPD investigation and grand jury proceedings.  Evangelista criticized Moore for "throwing the officers under the bus for the sake of political correctness," Complaint ¶ 83, and he also issued a public challenge to plaintiffs, stating, "Live by the sword you swing at us.  Go into a grand jury, waive immunity, like we do, speak your peace.  My guess is you won't show up."  Amended Complaint ¶ 84.

In what is perhaps the most serious–yet most speculative–allegation in *Green*, plaintiffs allege that the handling of the grand jury investigation was affected by purely political motives on Green's part.  Plaintiffs allege that Green, who was "in the middle of a hotly contested [re]election campaign," sought to "exploit the claims that the Plaintiffs had made against the police for his personal political gain."  Amended Complaint ¶¶ 88, 89, 90. Specifically, plaintiffs allege that Green

---

[6]It is not clear why the DA would have had to "grant" plaintiffs immunity for testifying before the grand jury, since, "[u]nless specifically excepted by statute, a witness who 'gives evidence' before the Grand Jury automatically receives transactional immunity with respect to the subject of that evidence." *Momah v. Rogers*, 239 A.D.2d 20, 22 (3d Dep't 1998) (citing N.Y. C.P.L. § 190.40(2)). *See also United States v. Nanni*, 59 F.3d 1425, 1429 (2d Cir.) ("Nanni last appeared before the State grand jury on January 9, 1984.  Under New York law, he was automatically granted immunity, with very limited exceptions, for his testimony in all of his grand jury appearances") (citing N.Y. C.P.L. § 190.40), *cert. denied*, 516 U.S. 1014 (1995). What plaintiffs may mean is that the DA refused to call plaintiffs as witnesses before the grand jury unless plaintiffs first waived their immunity, which they refused to do. *See* N.Y. C.P.L. §§ 190.40(2)(a), 190.45.

sought to curry favor with RPD officers and their union, the Locust Club, by manipulating the grand jury proceedings in such a way that the grand jury (which plaintiffs refer to as a "dummy grand jury," Amended Complaint ¶ 126) would be virtually certain to return a no-bill, meaning that no RPD officers would be charged with any crimes.  That, according to plaintiffs, is why the DA's office refused to subpoena plaintiffs or grant them immunity to testify before the grand jury.  Plaintiffs allege that as a result of Green's engineering a no-bill, Evangelista, on behalf of the Locust Club, endorsed Green in the 2007 district attorney race.  Amended Complaint ¶ 109.

Plaintiffs also allege that Green, Gargan and Evangelista made other inappropriate comments about various matters, particularly concerning plaintiffs' decision not to testify before the grand jury, and the grand jury's conclusion that no charges were warranted in connection with the June 1 incident.  Plaintiffs allege, for example, that Green stated publicly that "the grand jury considered the entire incident and all of the relevant facts and circumstances concerning that incident," and that Evangelista stated that "[t]he grand jury's findings are proof positive that the cops did nothing wrong" and that "the matter should be dropped."  Amended Complaint ¶¶ 130, 138.  Plaintiffs contend that these and other remarks by defendants were intended to conduct what amounted to a "trial by media" to convince the general public that the RPD and its officers had acted properly, and thereby to impede plaintiffs' ability to obtain an impartial jury in the *Lieberman* civil rights action.

Based on these allegations, plaintiffs assert seven causes of action in *Green*:  (1) a § 1983 claim against Gargan alleging his "concealment of evidence" from the grand jury; (2) a § 1983 claim against Gargan alleging his "fabrication of false evidence" in connection with the grand jury proceedings; (3) a § 1983 claim against Green and Evangelista alleging that they publicly made

"false statements" concerning the plaintiffs; (4) a § 1983 claim seeking to impose liability on the County, based on a number of factual theories, pursuant to *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978); (5) a claim against Green, Gargan and Evangelista alleging "conspiracy in violation of 42 U.S.C. § 1983", alleging that they "conspired to ... intimidate and compel Plaintiffs from not appearing [sic] at the grand jury" (Dkt. #12-2 ¶ 187); (6) a similar claim alleging that those same three defendants conspired together to obstruct justice, with the intent to deny plaintiffs equal protection under the law; and (7) another conspiracy claim, under 42 U.S.C. § 1985, alleging that Green, Gargan and Evangelista conspired to obstruct justice by deterring plaintiffs from testifying before the grand jury.[7]  As in *Lieberman*, plaintiffs seek an unspecified amount of compensatory and punitive damages.

## DISCUSSION

**I. County Defendants' Motion to Dismiss**

**A. Green's and Gargan's Prosecutorial Immunity**

Green and Gargan move to dismiss the claims against them in their individual capacities on the ground that they have absolute prosecutorial immunity from such claims.

The defense of absolute immunity protects government officials from individual liability for actions undertaken "in the exercise of their duties." *Burns v. Reed*, 500 U.S. 478, 486-487 (1991). Accordingly, prosecutors are afforded immunity for their conduct in "initiating a prosecution and

---

[7]It is not apparent how these conspiracy claims differ from one another.

in presenting the State's case," inasmuch as that conduct is "intimately associated with the judicial phase of the criminal process." *Imbler v. Pachtman*, 424 U.S. 409, 430-431 (1976).

Prosecutorial immunity "cover[s] 'virtually all acts, regardless of motivation, associated with [the prosecutor's] function as an advocate." *Dory v. Ryan*, 25 F.3d 81, 83 (2d Cir. 1994). "The absolute immunity accorded to government prosecutors encompasses not only their conduct of trials but all of their activities that can fairly be characterized as closely associated with the conduct of litigation or potential litigation, including presentation of evidence to a grand jury to initiate a prosecution ..., [and] activities in deciding not to do so ... ." *Barrett v. United States*, 798 F.2d 565, 571-572 (2d Cir. 1986) (citing *Lee v. Willins*, 617 F.2d 320 (2d Cir.), *cert. denied*, 449 U.S. 861 (1980)); *Dacey v. Dorsey*, 568 F.2d 275, 278 (2d Cir.), *cert. denied*, 436 U.S. 906 (1978); *Taylor v. Kavanagh*, 640 F.2d 450 (2d Cir. 1981).

"Absolute immunity extends even to the fabrication of evidence to be presented to a grand jury." *Tassone v. County of Onondaga*, No. 94-CV-0173, 1996 WL 307436, at *1 (N.D.N.Y. May 31, 1996) (citing *Dory*, 25 F.3d at 83). In *Hill v. City of New York*, 45 F.3d 653 (2d Cir. 1995), for example, the Second Circuit held that an ADA's alleged act of "conspiring to present falsified evidence to, and to withhold exculpatory evidence from, a grand jury" was "clearly protected by the doctrine of absolute immunity as all are part of his function as an advocate." *Id.* at 661.[8] *See also*

---

[8]With respect to the *Hill* plaintiff's allegation that the ADA in that case had instructed the plaintiff's five-year-old son to accuse the plaintiff of sexually abusing him, the Court of Appeals held that the extent of the defendant's immunity depended on whether that conduct occurred subsequent to the decision to indict the plaintiff, or whether it was an attempt to manufacture evidence in order to create probable cause to arrest her. If it were the latter, the court said, then the interview of the plaintiff's son would have been an investigatory, rather than a prosecutorial, act, and only qualified, good-faith immunity would apply. 45 F.3d at 662-63.

(continued...)

- 10 -

*Green v. City of New York*, No. 06-CV-3942, 2008 WL 4394679, at *2 (E.D.N.Y. Sept. 23, 2008)

(district attorney had absolute immunity with respect to plaintiff's claim that he failed to present to

the grand jury evidence that plaintiff had not committed the murder with which plaintiff was

eventually charged); *Hickey v. City of New York*, No. 01 CIV. 6506, 2002 WL 1974058, at *4

(S.D.N.Y. Aug. 26, 2002) (alleged actions by ADAs involving "the misleading of ... grand juries ...

would also be protected absolutely").

In the case at bar, plaintiffs argue that their claims against Green and Gargan do not involve

conduct before the grand jury, but acts that occurred prior to the empanelment of the grand jury, and

actions that they took after the grand jury's return of a no-bill.  It is plain from the complaint,

however, that plaintiffs *do* allege that defendants engaged in wrongful conduct in connection with

the grand jury proceedings, and that those allegations are central to plaintiffs' claims.

The first cause of action, for example, alleges that "[t]he defendants' decision to conceal the

Plaintiffs from the grand jury resulted in their [sic] being no charges of any crimes" against anyone

in connection with the June 1 incident.  Dkt. #12-2 ¶ 146.  Likewise, the second cause of action

alleges that "Gargan ... conspired to produce a false and misleading presentation to the grand jury

by excluding the victims of the hate crime [*i.e.*, the plaintiffs] from testifying ... ."  *Id.* ¶ 152.  Thus,

plaintiffs' insistence to the contrary notwithstanding, their claims against Green and Gargan are

clearly based on actions that they took in the course of and in relation to the grand jury proceedings.

---

[8](...continued)

The case at bar presents no such issues, since there is no allegation here that anyone was instructed to lie about anything, or that Green and Gargan were attempting to manufacture probable cause to arrest anyone.  Rather, plaintiffs allege that defendants sought to limit the evidence presented to the grand jury, so that the grand jury would *not* indict anyone.

*See Tassone*, 1996 WL 307436, at *1 (noting that plaintiff "allege[d] in general terms that [the ADA] had engaged in investigatory behavior but [that plaintiff] fail[ed] to offer any specific allegations that would justify that conclusion").  All such claims are barred by defendants' absolute prosecutorial immunity.  *See Hill*, 45 F.3d at 661-62 ("prosecutors are immune from § 1983 liability for their conduct before a grand jury").

Although unnecessary to my decision in this regard, it is nonetheless also worth noting that plaintiffs' allegations concerning what Green and Gargan actually did with respect to the grand jury do not support their conclusory assertions that defendants "concealed" or "falsified" evidence.  All that plaintiffs allege is that defendants chose not to subpoena them, and that defendants would not allow plaintiffs to testify voluntarily unless they waived their statutory immunity, and that as a result, plaintiffs did not testify before the grand jury.  That hardly amounts to the concealment or falsification of evidence.  *See Castillo v. Commissioner New York State Dep't of Corr. Services*, No. 06-CV-858, 2008 WL 4501881, at *1 (W.D.N.Y. Sept. 30, 2008) ("the Supreme Court [has] reaffirmed the principle that the complaint must recite factual allegations sufficient to raise the right to relief about the speculative level, and conclusory allegations or formulaic recitation of the elements will not do") (citing *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544, ___, 127 S.Ct. 1955, 1964-65 (2007)); *see also In re Bausch & Lomb Inc. ERISA Litigation*, No. 06-CV-6297, 2008 WL 5234281, at *8 (W.D.N.Y. Dec. 12, 2008) (court deciding Rule 12(b)(6) motion may reject "unwarranted inferences" and "unsupported conclusions" that are "cast in the form of factual allegations").

In addition, to the extent that plaintiffs' claims against Green and Gargan are premised on plaintiffs' allegations that defendants somehow prevented or dissuaded them from testifying before the grand jury, such an allegation does not show the violation of any constitutional right.  *See United States v. Williams*, 504 U.S. 36, 51-52 (1992) (suspect under investigation by a grand jury has never had a right to testify or to present exculpatory evidence); *Flores v. Levy*, No. 07-CV-3753, 2008 WL 4394681, at *11 (E.D.N.Y. Sept. 23, 2008) ("it is axiomatic that there is no constitutional right to testify before the grand jury").

## B. Non-Prosecutorial Acts

Plaintiffs do allege that Green and Gargan engaged in some activities that were not inherently prosecutorial in nature.  For example, they allege that Green made various statements to the news media about the grand jury proceedings and investigation of the June 1 incident.  Such acts are not protected by absolute immunity, but by qualified, good-faith immunity.  *See*, *e.g.*, *Buckley v. Fitzsimmons*, 509 U.S. 259, 277-78 (1993); *Milstein v. Cooley*, 257 F.3d 1004, 1013 (9th Cir. 2001); *Powers v. Coe*, 728 F.2d 97, 103 (2d. Cir. 1984); *Wilson v. Barcella*, No. CIV.A.K-05-3646, 2007 WL 963977, at *19 (S.D.Tex. Mar. 29, 2007); *Jovanovic v. City of New York*, No. 04 Civ. 8437, 2006 WL 2411541, at *16 (S.D.N.Y. Aug. 17, 2006).

These allegations fail to state a § 1983 claim, however.  Plaintiffs have identified neither any false statements by Green and Gargan, nor any constitutional right that was violated by the statements that defendants did make.

Plaintiffs do allege that Green publicly stated certain "falsehoods," Dkt. #12-2 ¶ 130, but the statements in question were plainly *not* false.  Plaintiffs base this allegation on two quotes attributed to Green by the Rochester *Democrat & Chronicle* newspaper on October 18, 2007:  "[T]he grand jury considered the entire [June 1] incident and all of the relevant facts and circumstances concerning that incident, and based on that review, they made the determination that there was no basis for any additional charges"; and "The grand jury could only act on the information before them."  *Id.* ¶¶ 130, 131.  In addition, plaintiffs quote a television news report stating that "District Attorney Mike Green says granting immunity would have limited the [grand] jury's ability to hand out criminal indictments."  *Id.* ¶ 132.

Taking these statements in reverse order, it seems self-evident that granting grand jury witnesses immunity could limit the grand jury's ability to hand up indictments, at least against those witnesses.  Plaintiffs' cryptic assertion that this statement "infers [sic] that the grand jury was a witch hunt without any direction whatsoever" has no apparent relevance to plaintiffs' claims, and in any event is not a reasonable inference to draw from this statement.[9]

Likewise, it would seem to be a truism that a grand jury can only act upon the information before it.  That the information presented to this grand jury did not include plaintiffs' testimony (because they refused to waive their immunity and therefore did not testify) does not make the statement any less true.

---

[9]What plaintiffs may mean is that Green was implying that he had not wanted to foreclose the possibility of the grand jury's indicting plaintiffs themselves, which arguably could be taken as an indication that he believed that plaintiffs may have been guilty of some wrongdoing themselves during the June 1 incident.  Even if such an inference from Green's statement were reasonable, however, that statement could not reasonably be characterized as a "falsehood."

Plaintiffs also take issue with Green's statement that the grand jury "considered the entire incident and all of the relevant facts and circumstances concerning that incident ... ." Plaintiffs apparently consider that statement to have been false because, in their view, the grand jury did not consider the "entire" incident or "all of the relevant facts and circumstances," because the grand jury never heard plaintiffs' version of the incident.

Even accepting plaintiffs' assertion that the evidence presented to the grand jury was in some sense incomplete because it did not include plaintiffs' testimony, it is an unreasonable and unwarranted stretch to characterize Green's statement as "false." Green simply made a general statement of opinion to the effect that the grand jury process was fair, and an accurate statement of fact that the grand jury had reached the conclusion that no charges were warranted in connection with the June 1 incident. Plaintiffs may be of the opinion that the process was less than fair, but that does not render Green's statement false. *See Jackson v. Mecklenburg County, N.C.*, No. 3:07-cv-218, 2008 WL 2982468, at *9 (W.D.N.C. July 30, 2008) (defendant's "memo represented a statement of opinion and is therefore not capable of being judged for accuracy in terms of being true or false").

In any event, even if one could view Green's statement as somehow false, that statement did not violate plaintiffs' constitutional rights. The statements upon which plaintiffs rely did not contain any reference to plaintiffs. Green cast no aspersions upon plaintiffs, nor did he opine that they were lying about what happened to them on June 1. He simply stated, accurately enough, that the grand jury had decided not to indict anyone in connection with those events.

Going one step further, even if Green's statements did somehow violate plaintiffs' rights, Green would be entitled to qualified immunity from liability for those statements. It is not at all

established (much less was it clearly established at the time of the relevant events) that a DA's public statements of the type alleged here might violate the constitutional rights of someone in plaintiffs' position.  *See Kulwicki v. Dawson*, 969 F.2d 1454, 1468 (3d Cir. 1992) (holding that police officer was entitled to qualified immunity in civil rights action based on officer's communications with news media concerning criminal case involving plaintiff, and adding that "[t]here is no federal constitutional right to reputation") (citations omitted).[10]

## C. Claim against the County

Plaintiffs' fourth cause of action asserts a claim against the County, based on several theories.  First, plaintiffs allege that Green was a "policymaker" for the County, and that in that role he both directed and ratified Gargan's conduct (with respect to the grand jury proceedings) that is alleged to have violated plaintiffs' constitutional rights. Dkt. #12-2 ¶¶ 171-74, 181-83.  Plaintiffs also allege that the County is liable for Green's own allegedly unconstitutional conduct, particularly his various statements to the news media concerning the grand jury proceedings.  *Id.* ¶¶ 175-77.

These allegations fails to state a claim against the County.  First, as explained above, Green's and Gargan's acts did not violate plaintiffs' constitutional rights in the first place.  Those acts could therefore not give rise to any derivative liability of the County or any other entity.

---

[10]Plaintiffs also allege that Gargan sent plaintiffs' attorney two letters in early October 2007, memorializing certain discussions that had taken place between Gargan, Terrance, and plaintiffs' attorney at a meeting at Gargan's office on September 18, 2007. Dkt. #12-2 ¶¶ 111, 114.  Plaintiffs allege that Gargan misstated the substance of those discussions in certain respects, and that plaintiffs' attorney responded with a letter setting forth her recollection of the meeting.  *Id.* ¶ 113.  There is no allegation that Gargan ever made his letter public, however, nor have plaintiffs articulated any manner in which Gargan's letters could have violated plaintiffs' constitutional rights.

Second, the case law is clear that a county in New York cannot be held liable for the prosecutorial acts of a district attorney, because the DA acts in that capacity on behalf of the state, not the county. *See Ying Jing Gan v. City of New York*, 996 F.2d 522, 535-36 (1993) ("[A] District Attorney is not an officer or employee of the municipality but is instead a quasi-judicial officer acting for the state in criminal matters") (internal quotation marks omitted); *Baez v. Hennessy*, 853 F.2d 73, 77 (2d Cir. 1988) ("[w]hen prosecuting a criminal matter, a district attorney in New York State, acting in a quasi-judicial capacity, represents the state not the county"), *cert. denied*, 488 U.S. 1014 (1989); *Cox v. County of Suffolk*, 780 F.Supp. 103, 108 (E.D.N.Y. 1991) (county could not be held liable under § 1983 for acts by a DA in connection with grand jury proceedings).

That principle also disposes of plaintiffs' claim that the County maintained a policy or custom of "allowing officials to publish premature official conclusions of the lack of criminality and guilt" with respect to grand jury investigations, and a policy or custom of "encouraging prosecutors to target gay and lesbian citizens for selective enforcement of the criminal law." *Id.* ¶ 178.  Any relevant policies concerning grand jury investigations were not policies of the County–which lacked the authority to set such policies–but policies of the DA, acting on behalf of New York State.  *See Baez*, 853 F.2d at 77 ("A county has no right to establish a policy concerning how [a DA] should prosecute violations of State penal laws"); *Tassone v. County of Onondaga*, No. 94-CV-0173, 1996 WL 77429, at *4 (N.D.N.Y. Feb. 15, 1996) ("Individual prosecutorial actions, such as those Tassone describes, are not policies of the county").

Plaintiffs also allege, in their brief in opposition to the County defendants' motion to dismiss, that the County "has a policy of not enforcing hate crimes."  Dkt. #13-2 at 31.  In support of that

assertion, plaintiffs state that "[t]he first hate crime ever prosecuted by the Monroe County District Attorney's Office was as **late as 2005**," *id.* at 2.   Plaintiffs argue that the "paucity of such prosecutions" in Monroe County demonstrates the existence of the alleged policy. *Id.* at 31.

Aside from the fact that these allegations are not set forth in the complaint, they again relate to decisions by the DA's office, which is not an agent of the County where criminal prosecutions are concerned.  That alone is enough to dispose of this argument, but I also note that, assuming the truth of plaintiffs' allegation concerning the date of the first "hate crime" prosecution in Monroe County, that alone is probative of nothing.  There are no allegations in the complaint suggesting that any hate crimes could have or should have been prosecuted in Monroe County prior to 2005.[11]

**D. Official-Capacity Claims against Green and Gargan**

Plaintiffs' claims against Green and Gargan in their official capacities are barred by the Eleventh Amendment, since defendants acted, in all relevant respects, on behalf of New York State, which itself is immune under the Eleventh Amendment. *See Lewis v. City of New York*, No. 07 Civ. 7258, 2008 WL 4307985, at *2 (S.D.N.Y. Sept. 16, 2008); *Clemente v. Town of North Greenbush*, No. 1:08-CV-0212, 2008 WL 1771934, at *2 (N.D.N.Y. Apr. 15, 2008); *Escobar v. City of New York*, No. 1:05-cv-3030, 2007 WL 1827414, at *3 (E.D.N.Y. June 25, 2007); *Houghton v. Cardone*, 295 F.Supp.2d 268, 275 (W.D.N.Y. 2003).

In addition, even if those claims could be construed as claims against the County, they are subsumed within plaintiffs' claims against the County itself. *See Warney v. City of Rochester*, 536

---

[11]The New York "hate crimes" statute, N.Y. Penal L. § 485.00, took effect on October 8, 2000.

F.Supp.2d 285, 298 (W.D.N.Y. 2008) ("any official capacity claim against Green is subsumed" in plaintiff's claim against Monroe County); *McCrary v. County of Nassau*, 493 F.Supp.2d 581, 588 n.3 (E.D.N.Y. 2007) ("Plaintiff's claims against [the Nassau County DA] in her official capacity are subsumed by Plaintiff's claims against Nassau County") (citing *Kentucky v. Graham*, 473 U.S. 159, 165 (1985)).

### E. Conspiracy Claims

Plaintiffs assert three conspiracy claims, which are virtually indistinguishable from each other. All these claims must be dismissed as well.[12]

"In order to maintain an action under § 1985, [plaintiffs] 'must provide some factual basis supporting a meeting of the minds, such that defendants entered into an agreement, express or tacit, to achieve the unlawful end.'" *Webb v. Goord*, 340 F.3d 105, 110 (2d Cir. 2003) (quoting *Romer v. Morgenthau*, 119 F.Supp.2d 346, 363 (S.D.N.Y.2000)). A purely conclusory allegation to that effect will not suffice. *See Webb*, 340 F.3d at 110 ("The plaintiffs have not alleged, except in the most conclusory fashion, that any such meeting of the minds occurred among any or all of the defendants. Their conspiracy allegation must therefore fail"); *Boddie v. Schnieder*, 105 F.3d 857, 862 (2d Cir. 1997) (claims based on "conclusory, vague or general allegations of conspiracy to deprive a person of constitutional rights" should be dismissed); *Brown v. City of New York*, No. 98

---

[12]Although two of these claims are ostensibly brought under § 1983, I construe them as claims under 42 U.S.C. § 1985. *See Webb v. Goord*, 340 F.3d 105 (2d Cir. 2003) ("The plaintiffs' claim under 42 U.S.C. § 1983, which is styled "Conspiracy to Violate Civil Rights," should actually be stated as a claim under Section 1985, which applies specifically to conspiracies"), *cert. denied*, 540 U.S. 1110 (2004).

CV 3844, 2004 WL 2884306, at *13 (S.D.N.Y. Dec. 10, 2004) ("Plaintiff has failed ... to set forth sufficient factual allegations that would, if accepted as true, support a claim for conspiracy" against ADA who was alleged to have induced three witnesses to falsely testify against plaintiff as part of conspiracy to deprive plaintiff of his constitutional rights).

In the case at bar, plaintiffs fail to offer anything more than conclusory allegations of such a meeting of the minds.  Their very serious allegation that Green and Evangelista reached a *quid pro quo* agreement whereby Evangelista delivered the Locust Club's endorsement of Green in his reelection campaign, in exchange for Green's manipulation of the grand jury proceedings to result in the return of a no-bill, is based on nothing but rank speculation.  That is not enough to survive a motion to dismiss.  *See Twombly*, 127 S.Ct. at 1966 (drawing analogy between an inadequate allegation of parallel conduct, in antitrust context, and "a naked assertion of conspiracy"); *Morrison v. Sheffield,* No. 7:08-cv-00556, 2008 WL 5334370, at *2 (W.D.Va. Dec. 19, 2008) (dismissing civil rights conspiracy claim that was "devoid of any sufficient allegation of defendants' meeting of the minds and relie[d] on conjecture"); *Sepulveda v. Woodford*, No. 1:05-cv-01143, 2008 WL 5219455, at *5 (E.D.Cal. Dec. 12, 2008) ("Plaintiff's conspiracy allegations are speculative at best.  Plaintiff has not alleged facts sufficient to state a claim that there existed an agreement or meeting of the minds between defendants to violate his constitutional rights.  Plaintiff fails to state a cognizable conspiracy claim").[13]

---

[13]To the extent that the conspiracy claims are based on Green's and Gargan's acts in connection with the grand jury proceedings, they are also barred by defendants' prosecutorial immunity.  *See Hill*, 45 F.3d at 661-62 (stating that "prosecutors are immune from § 1983 liability for their conduct before a grand jury," and adding, "Nor do the plaintiff's allegations of a conspiracy alter this rule").

## II. Evangelista's Motion to Dismiss

Plaintiffs' claims against Evangelista require little comment.  Accepting the truth of plaintiffs' factual allegations (as opposed to their legal conclusions and unsupported inferences), all that those allegations show is that Evangelista made some public comments expressing his opinion that the RPD officers had done nothing wrong during the June 1 incident involving plaintiffs.  That does not give rise to any viable claim.

## A. False Statements

Plaintiffs assert a claim against Evangelista for "making false statements."  As with their claims against Green and Gargan, however, plaintiffs have failed to identify any false statements by Evangelista.

Evangelista is alleged to have made a public statement about the relevant events for the first time in late July 2007.  Plaintiffs allege that Evangelista complained publicly about Moore's role in the RPD internal investigation of the June 1 incident, and about what Evangelista characterized as a "feeding frenzy" and a "public hunt to punish hard-working cops who are trying to do the best that they can." Dkt. #12-2 ¶ 81.  Evangelista allegedly complained that Moore was "throwing the officers under the bus for the sake of political correctness," *id.* ¶ 83, and he stated that the issues involving the officers' conduct on June 1 were "not a core problem facing this city."  *Id.* ¶ 81.

Evangelista is also alleged to have publicly issued a challenge to the plaintiffs themselves, stating, "Live by the sword you swing at us.  Go into a grand jury, waive immunity, like we do, speak your peace.  My guess is you won't show up." *Id.* ¶ 84.  In addition, after the grand jury's return of

a no-bill, Evangelista allegedly stated on a television news broadcast, "The grand jury's findings are proof positive that the cops did nothing wrong; the matter should be dropped." *Id.* ¶ 138.

These statements are, at most, no more than expressions of opinion by Evangelista, uttered by him in his role as president of the Locust Club.[14]   He is entitled to express those views.  Even drawing all *reasonable* inferences in plaintiffs' favor, none of Evangelista's statements could be considered objectively false.  *See Jackson*, 2008 WL 2982468, at *9 (statement of opinion is "not capable of being judged for accuracy in terms of being true or false"); *Lapar v. Morris*, 119 A.D.2d 635, 636 (2d Dep't 1986) ("Whether a statement constitutes fact or opinion is a question of law for the court to decide"); *see also Dworin v. Deutsch*, No. 06 Civ. 13265, 2008 WL 508019, at *1 (S.D.N.Y. Feb. 22, 2008) (dismissing defamation claim under Rule 12(b)(6), in part on ground that alleged statements on which claim was based constituted expressions of opinion).

In any event, even if any of Evangelista's statements could be considered "false," I fail to see how the utterance of those statements gives rise to any constitutional claim.  Plaintiffs allege that Evangelista's conduct deprived them of their rights under the Fourth and Fourteenth Amendments. Dkt. #12-2 ¶ 165.  The contention that plaintiffs' Fourth Amendment rights were violated is simply baffling, since that amendment deals with unreasonable searches and seizures.  *See* U.S. Const. amend. IV.

---

[14]As statements of opinion relating to a matter of public concern, Evangelista's statements were themselves protected by the First Amendment.  *See Coliniatis v. Dimas*, 848 F.Supp. 462, 467 (S.D.N.Y. 1994) (statements of opinion on matters of public concern are protected under the First Amendment, provided that "they do not contain a *provably false* factual connotation, [and] 'cannot reasonably [be] interpreted as stating *actual facts* about an individual'") (quoting *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 20 (1990)) (emphasis added).

With respect to the Fourteenth Amendment, plaintiffs may be attempting to assert a claim for interference with their right of access to the courts, since they allege, *inter alia*, that Evangelista's statements "were intended to inflame the Rochester community and federal jury pool against the Plaintiffs, and to compromise the fairness of subsequent judicial proceedings." Dkt. #12-2 ¶ 164. The constitutional right of access to the courts is grounded, in part, in the Fourteenth Amendment. *See Bourdon v. Loughren*, 386 F.3d 88, 95 (2d Cir. 2004); *Davis v. Goord*, 320 F.3d 346, 351 (2d Cir. 2003).[15]

Plaintiffs' allegations nevertheless fail to support such a claim.  A plaintiff asserting an access-to-courts claim must allege facts indicating that (1) the defendant "deliberately and maliciously interfered" with that access, and (2) the interference resulted in injury to the plaintiff. *Kampfer v. Vonderheide*, 216 F.Supp.2d 4, 7 (N.D.N.Y. 2002).[16]

For purposes of Evangelista's Rule 12(b)(6) motion, the Court will assume that Evangelista acted "deliberately and maliciously."  *See Staehr v. Hartford Financial Services Group, Inc.*, 547 F.3d 406, 409 n. 1 (2d Cir. 2008) ("For purposes of evaluating a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), this Court sets forth facts asserted in the Complaint and assumes their truth").  There are no factual allegations, however, that Evangelista's statements has caused any harm to plaintiffs implicating their access to the courts.

---

[15]The actual term "access to the courts" is not found anywhere in the Constitution.  *See Bourdon*, 386 F.3d at 92-96 (discussing the "various ... constitutional provisions" from which right derives).

[16]The Court assumes, without deciding, that Evangelista is a state actor for purposes of § 1983, notwithstanding the fact that he appears to have acted in his role as Locust Club president rather than as a police officer as such.  *But see Montgomery v. City of Ardmore*, 365 F.3d 926, 942 (10th Cir. 2004) (police officers' union was not state actor for purposes of § 1983 claim).

To make out such a claim, plaintiffs must show that they were prevented from filing suit, or that defendant's actions rendered ineffective any remedy that they might otherwise have had. *City of New York v. Beretta U.S.A. Corp.*, 524 F.3d 384, 397-98 (2d Cir. 2008). *See also Christopher v. Harbury*, 536 U.S. 403, 415 (2002) ("the right [of access to the courts] is ancillary to the underlying claim, without which a plaintiff cannot have suffered injury by being shut out of court"), *cert. denied*, 129 S.Ct. 195 (2008); *Vacarella v. New York State*, No. 00-CV-6262, 2006 WL 2086204, at *3 (E.D.N.Y. July 25, 2006) ("In order to establish such a claim, a plaintiff must show that the defendant was responsible for actions that actually injured the plaintiff's efforts to pursue a claim") (internal quotation marks omitted).

Plaintiffs' claims are based on the allegation that Evangelista's statements have tainted the jury pool available for the *Lieberman* action. Such a claim is entirely speculative and quite premature at this point. *See United States v. Graham*, 257 F.3d 143, 155 (2d Cir. 2001) ("while the events surrounding the instant case have gained some notoriety, the possibility that the jury pool will become so tainted as to prevent the defendants here from obtaining fair trials is too speculative to justify denial of the public's right to inspect and copy evidence presented in open court") (internal quotation marks omitted); *United States v. Ayala-Martinez*, 24 F.Supp.2d 165, 168 (D.P.R. 1998) ("since the jury selection process has not yet commenced, ... any claim by defendant as to actual prejudice [as a result of pretrial publicity] is premature and illusory"). Furthermore, even if Evangelista's statements do make it somewhat more difficult to select an impartial jury, that would not amount to a violation of plaintiffs' right of access to the courts. *See Spano v. McAvoy*, 589

F.Supp. 423, 427 ("while plaintiff's ability to litigate has allegedly been impaired [as a result of defendants' actions], his access to the courts has not been interfered with").

## B. Conspiracy

The amended complaint adds Evangelista as a defendant on plaintiffs' civil rights conspiracy claims.  Those claims fail for the same reasons previously stated with respect to defendants Green and Gargan.  Plaintiffs have alleged nothing more than speculation that Evangelista and Green entered into a deal whereby Evangelista would endorse Green for reelection if Green obtained a no-bill from the grand jury with respect to the June 1 incident.  This is yet another example of plaintiffs' succumbing to the *post hoc ergo propter hoc* fallacy.

A "complaint alleging a conspiracy to violate civil rights ... must contain more than mere conclusory allegations." *Koulkina v. City of New York*, 559 F.Supp.2d 300, 318 (S.D.N.Y. 2008). *See*, *e.g.*, *Chodkowski v. City of New York*, No. 06 CV 7120, 2007 WL 2717872, at *10 (S.D.N.Y. Sept. 11, 2007) (dismissing civil rights conspiracy claim where plaintiffs had "alleged nothing to demonstrate that a 'meeting of the minds' occurred between" defendants to deprive plaintiffs of their civil rights).  Plaintiffs in the case at bar have failed to state a conspiracy claim that is "plausible on its face." *Twombly*, 127 S.Ct. at 1974.  Plaintiffs need not plead detailed facts at this stage, but they must do more than simply make an unsupported inferential leap from the grand jury's return of a no-bill and Evangelista's subsequent endorsement of Green.  *See Ames v. Department of Marine Resources Comm'r*, No. 8-289, 2008 WL 5050159, at *4 (D.Me. Nov. 19, 2008) ("courts have

required more than conclusory allegations of conspiracy to justify proceeding against a named defendant").

Furthermore, even if plaintiffs had sufficiently pleaded a meeting of the minds between Evangelista and Green, they would still fail to state a claim for conspiracy to interfere with their civil rights under § 1985. There are three subsections to § 1985, none of which applies here.

First, § 1985(1) deals with preventing an officer of the United States from performing his duties, and clearly has no application to this case. Likewise, the first part of § 1985(2)[17] applies only to threatening or intimidating a party or witness "in any court of the United States," and thus has no application to plaintiffs' claims, which are based on the allegation that plaintiffs were somehow prevented from testifying before the state court grand jury.

The second part of § 1985(2), which deals with conspiracies to obstruct justice, applies to state court proceedings, but requires a showing of invidious class-based animus. *See Gleason v. McBride*, 869 F.2d 688, 694-95 (2d Cir. 1989); *Zemsky v. City of New York*, 821 F.2d 148, 151 and n. 4 (2d Cir.), *cert. denied*, 484 U.S. 965 (1987); *Farid v. Bouey*, 554 F.Supp.2d 301, 325 (N.D.N.Y.

---

[17](2) Obstructing justice; intimidating party, witness, or juror

If two or more persons in any State or Territory conspire to deter, by force, intimidation, or threat, any party or witness in any court of the United States from attending such court, or from testifying to any matter pending therein, freely, fully, and truthfully, or to injure such party or witness in his person or property on account of his having so attended or testified, or to influence the verdict, presentment, or indictment of any grand or petit juror in any such court, or to injure such juror in his person or property on account of any verdict, presentment, or indictment lawfully assented to by him, or of his being or having been such juror; or if two or more persons conspire for the purpose of impeding, hindering, obstructing, or defeating, in any manner, the due course of justice in any State or Territory, with intent to deny to any citizen the equal protection of the laws, or to injure him or his property for lawfully enforcing, or attempting to enforce, the right of any person, or class of persons, to the equal protection of the laws;

May 20, 2008); *Daigneault v. Eaton Corp.*, 2008 WL 410594, at *8 n. 12 (D.Conn. Feb. 12, 2008).

Sexual orientation is not a protected category under § 1985, however.  *See Murray v. Oklahoma*, No.

CIV-07-1404, 2008 WL 740338, at *7 (W.D.Okla.  Mar. 17, 2008); *Gonzalez v. City of Fresno*, 2007

WL 2288322, at *4 (E.D.Cal. Aug. 8, 2007); *Dix v. City of New York*, No. 01 CIV. 6186, 2002 WL

31175251, at *10 (S.D.N.Y. Sept. 30, 2002).  Any claim under § 1985(3) would fail for the same

reason.[18]  *See Cine SK8, Inc. v. Town of Henrietta*, 507 F.3d 778, 791 (2d Cir. 2007); *Britt v. Garcia*,

457 F.3d 264, 270 n. 4 (2d Cir. 2006).


**CONCLUSION**

The motion to dismiss brought by defendants Michael Green, William Gargan, and Monroe

County (Dkt. #2), and defendant Ron Evangelista's motion to dismiss (Dkt. #10), are granted, and

the complaint is dismissed.

---

[18](3) Depriving persons of rights or privileges

If two or more persons in any State or Territory conspire or go in disguise on the highway or on
the premises of another, for the purpose of depriving, either directly or indirectly, any person or
class of persons of the equal protection of the laws, or of equal privileges and immunities under
the laws; or for the purpose of preventing or hindering the constituted authorities of any State or
Territory from giving or securing to all persons within such State or Territory the equal
protection of the laws; or if two or more persons conspire to prevent by force, intimidation, or
threat, any citizen who is lawfully entitled to vote, from giving his support or advocacy in a legal
manner, toward or in favor of the election of any lawfully qualified person as an elector for
President or Vice President, or as a Member of Congress of the United States; or to injure any
citizen in person or property on account of such support or advocacy; in any case of conspiracy
set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in
furtherance of the object of such conspiracy, whereby another is injured in his person or property,
or deprived of having and exercising any right or privilege of a citizen of the United States, the
party so injured or deprived may have an action for the recovery of damages occasioned by such
injury or deprivation, against any one or more of the conspirators.

The motion to dismiss brought by defendants David Moore, "John Doe" City of Rochester police officers, and the City of Rochester (Dkt. #6), is denied as moot.

Plaintiffs' motion to amend and to correct the complaint and to consolidate this action with *Lieberman v. City of Rochester*, 07-CV-6316 (Dkt. #12), is denied as moot.

IT IS SO ORDERED.

_____
DAVID G. LARIMER
United States District Judge

Dated: Rochester, New York
      January 6, 2009.